**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

JEREA AIKEN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

TRANSFORM CREDIT INC., d/b/a TOGETHER LOANS, a Delaware corporation,

Defendant.

C.A. No. ________________

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Jerea Aiken ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Defendant Transform Credit Inc., d/b/a Together Loans ("Transform Credit" or "Defendant"), and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including the investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. "Telemarketing calls are also intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), its implementing regulations, 47 C.F.R. § 64.1200, and the South Carolina Telephone Privacy Protection Act, S.C. Code Ann. § 37-21-10, et seq. (the

"SCTPPA"). It arises from Defendant's practice of sending automated, templated telemarketing text messages promoting its cosigner personal loans to consumers whose numbers are registered on the National Do-Not-Call Registry—and continuing to send them after consumers reply with the very opt-out keyword Defendant's own messages tell them to use.

3. Defendant's text messages instructed Plaintiff: "Reply CANCEL to unsubscribe." Plaintiff did exactly that. On or about September 24, 2023, she replied "Cancel" to Defendant's short code, 28126. Defendant ignored her. Beginning fifty-eight days later, Defendant sent Plaintiff at least four more marketing text messages from the same short code, including three identical messages within roughly twenty-five hours—one of them at 4:41 a.m.

4. Plaintiff's cellular telephone number has been registered on the National Do-Not-Call Registry since March 2, 2021—more than two and a half years before any of the text messages at issue.

5. Plaintiff brings this action on behalf of herself and classes of similarly situated consumers to recover the statutory damages Congress provided—up to $500 for each violation, which the Court may increase to up to $1,500 for each knowing or willful violation, 47 U.S.C. § 227(c)(5)—and, on behalf of a South Carolina Subclass, the remedies the SCTPPA provides to a person aggrieved by a violation: actual losses in addition to damages of $1,000 for each violation, which the Court may increase to up to $5,000 for each wilful violation, together with attorneys' fees and costs, S.C. Code Ann. § 37-21-80(A)–(C). Plaintiff also seeks injunctive relief under the TCPA, 47 U.S.C. § 227(c)(5)(A).

## JURISDICTION AND VENUE

6. This Court has federal-question subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

7. This Court also has original subject-matter jurisdiction over this action, including Plaintiff's SCTPPA claims, under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), independent of its federal-question jurisdiction, because the proposed classes each exceed 100 members; at least one class member is a citizen of a State different from Defendant—Plaintiff is a citizen of South Carolina, while Defendant is a citizen of Delaware and, on information and belief, Illinois; and, on information and belief, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

8. This Court additionally has supplemental jurisdiction over Plaintiff's SCTPPA claims under 28 U.S.C. § 1367(a) because those claims arise from the same text messages, and form part of the same case or controversy, as the TCPA claims.

9. This Court has general personal jurisdiction over Defendant because Defendant is incorporated under the laws of the State of Delaware and is therefore at home in this State. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant, the only defendant, resides in this District: Defendant is a Delaware corporation subject to this Court's personal jurisdiction with respect to this action. 28 U.S.C. § 1391(c)(2).

## PARTIES

11. Plaintiff Jerea Aiken is a natural person who resides in Beaufort, Beaufort County, South Carolina, and is a citizen of South Carolina. At all relevant times, Plaintiff was the subscriber

and customary user of the cellular telephone number ending in -7289, which bears a South Carolina (843) area code (the "Number").

12. Plaintiff uses the Number as her personal, residential telephone line, for personal, family, and household purposes, including in and around her home. The Number is not associated with any business.

13. Plaintiff registered the Number on the National Do-Not-Call Registry on March 2, 2021, and the Number has remained registered at all times since. The Registry's own confirmation to Plaintiff states that she "successfully registered [her] phone number ending in 7289 on March 02, 2021."

14. Plaintiff is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39), a "consumer" as defined by S.C. Code Ann. § 37-21-20(1), and a "residential telephone subscriber" within the meaning of 47 C.F.R. § 64.1200(c) and (d).

15. Defendant Transform Credit Inc. is a Delaware corporation with, on information and belief, its principal place of business in Chicago, Illinois. Defendant's website directs consumer complaints to 1440 W. Taylor Street, #431, Chicago, Illinois 60607. Defendant's registered agent in Delaware is Harvard Business Services, Inc., 16192 Coastal Highway, Lewes, Delaware 19958.

16. Defendant is a consumer lender that markets and originates cosigner personal loans to consumers online. Defendant did business as "Transform Credit" at the time of the text messages at issue and, since a rebranding in December 2025, does business as "Together Loans." Defendant describes Together Loans as "the cosigner loan company formerly known as Transform Credit" and states that it is "the same company, same team, and same loan." Defendant states that it is "currently originating or serving" in numerous States, including South Carolina.

17. Defendant is a "person" as defined by 47 U.S.C. § 153(39) and S.C. Code Ann. § 37-21-20(3), and a "telephone solicitor" as defined by S.C. Code Ann. § 37-21-20(7).

18. Unless otherwise indicated, references to Defendant include its agents, employees, officers, directors, vendors, text-messaging and marketing platforms, and all other persons acting on its behalf. Each text message alleged herein was sent by Defendant, or by a person acting on Defendant's behalf and with its authority, and each message identified itself as from "Transform Credit." Defendant is directly liable for the messages it sent and vicariously liable, under federal common-law agency principles, for any messages sent on its behalf.

**THE TELEPHONE CONSUMER PROTECTION ACT**

19. In enacting the TCPA, Congress found that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy" and that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers." Pub. L. No. 102-243, § 2(5)–(6), 105 Stat. 2394, 2394 (1991).

20. Section 227(c) of the TCPA directed the Federal Communications Commission (the "FCC") to initiate a rulemaking proceeding "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

21. Because the TCPA "is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

**A. The National Do-Not-Call Registry**

22. The regulations promulgated under Section 227(c) prohibit any person or entity from initiating "any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not

wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). Such registrations "must be honored indefinitely." *Id.*

23. A "telephone solicitation" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," excluding, as relevant here, a call or message to a person with that person's prior express invitation or permission or with whom the caller has an established business relationship. 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).

24. An "established business relationship" arising from a consumer's inquiry or application lasts, at most, three months, 47 C.F.R. § 64.1200(f)(5), and is terminated by the consumer's request not to be contacted: "[t]he subscriber's seller-specific do-not-call request . . . terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller." *Id.* § 64.1200(f)(5)(i).

25. The FCC has determined that it will presume wireless subscribers who register their numbers on the Registry to be "residential subscribers." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14039 (2003).

**B. Internal Do-Not-Call Procedures**

26. The regulations further provide that "[n]o person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity," and they prescribe minimum standards for those procedures. 47 C.F.R. § 64.1200(d).

27. Those minimum standards include (a) a written policy, available upon demand, for maintaining a do-not-call list, *id.* § 64.1200(d)(1); (b) training of personnel engaged in

telemarketing in the existence and use of the do-not-call list, *id.* § 64.1200(d)(2); and (c) recording a consumer's do-not-call request and honoring it within a reasonable time from the date the request is made, *id.* § 64.1200(d)(3). When the messages at issue were sent, that reasonable time "may not exceed 30 days from the date of such request," 47 C.F.R. § 64.1200(d)(3) (2023); the outer limit is now ten business days, 47 C.F.R. § 64.1200(d)(3); *see* 89 Fed. Reg. 15756, 15763 (Mar. 5, 2024). A do-not-call request must be honored for five years. 47 C.F.R. § 64.1200(d)(6).

28. The regulation's outer limit is not a grace period. A "reasonable time" to honor a do-not-call request turns on the sender's capability, and a sender able to comply immediately must do so. *See Lourie v. Papa John's Int'l, Inc.*, No. 1:23-cv-4320-MHC, 2024 U.S. Dist. LEXIS 119679, at *9–10 (N.D. Ga. June 25, 2024). A sender that designates an automated reply keyword such as "CANCEL" has the capability to honor that keyword immediately.

**C. Quiet Hours**

29. The regulations also prohibit initiating any telephone solicitation to a residential telephone subscriber "before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location)." 47 C.F.R. § 64.1200(c)(1).

**D. Text Messages and the Private Right of Action**

30. By rule, the protections of 47 C.F.R. § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers." 47 C.F.R. § 64.1200(e) (as in effect Nov. 2023–Jan. 2024). Effective March 26, 2024, the FCC amended § 64.1200(e) to add the words "or text messages," so that it now reaches "telephone solicitations or telemarketing calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e); 89 Fed. Reg. 5098, 5104 (Jan. 26, 2024). In doing so, the FCC described

its action as "codify[ing] the National DNC Registry's existing protections to text messages," and stated that this action "is consistent with Federal court opinions." 89 Fed. Reg. at 5099.

31. The Supreme Court has recognized that a text message to a cellular telephone "qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). Courts within the Third Circuit have held that a text message is a "telephone call" for purposes of the private right of action in 47 U.S.C. § 227(c)(5). *See, e.g.*, *Dovberg v. Haller Enters., Inc.*, No. 5:26-cv-4286, 2026 U.S. Dist. LEXIS 241243, at *9–10 (E.D. Pa. Oct. 21, 2026); *Pero v. Brown-Daub Chevrolet of Nazareth*, No. 25-7016, 2026 U.S. Dist. LEXIS 134498, at *10 (E.D. Pa. June 17, 2026) ("[W]e hold that a text message is a call for purposes of 47 U.S.C. § 227(c)."); *Newell v. Child.'s Dental Health Assocs., LLC*, No. 25-5238, 2026 U.S. Dist. LEXIS 74360, at *23 (E.D. Pa. Apr. 6, 2026); *see also Connor v. Wishnia*, No. 2:24-cv-06310-JD-MGB, 2025 U.S. Dist. LEXIS 155922 (D.S.C. July 15, 2025) (on motion for default judgment, applying § 64.1200(e) to text messages and recommending damages under § 227(c)(5) and the SCTPPA), *report and recommendation adopted*, 2025 U.S. Dist. LEXIS 154494 (D.S.C. Aug. 11, 2025).

32. Section 227(c)(5) provides a private right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection," to enjoin the violations and "to receive up to $500 in damages for each such violation," and provides that if "the defendant willfully or knowingly violated the regulations . . . , the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(c)(5).

**THE SOUTH CAROLINA TELEPHONE PRIVACY PROTECTION ACT**

33. The SCTPPA, enacted by 2018 S.C. Acts No. 218 and effective May 18, 2018, defines a "telephone solicitation" to include "a text or media message sent . . . to a wireless telephone with a South Carolina area code, for the purpose of offering or advertising a property, good, or service for sale, lease, license, or investment, including offering or advertising an extension of credit." S.C. Code Ann. § 37-21-20(6).

34. The SCTPPA provides that "[a] person may not initiate, or cause to be initiated, a telephone solicitation directed to a telephone number when a person at that telephone number previously stated a desire not to be contacted again by or on behalf of the person on whose behalf the telephone solicitation is being made," and that "[a]ny request not to receive telephone solicitations must be honored for at least five years from the time the request is made." S.C. Code Ann. § 37-21-70(A).

35. The SCTPPA further provides that "[a] telephone solicitor may not initiate, or cause to be initiated, a telephone solicitation to a telephone number on the National Do Not Call Registry maintained by the federal government pursuant to the Telemarketing Sales Rule, 16 C.F.R. Part 310, and 47 C.F.R. Section 64.1200." S.C. Code Ann. § 37-21-70(B).

36. The SCTPPA further provides that "[a] telephone solicitor may not initiate, or cause to be initiated, a telephone solicitation at any time other than between 8:00 a.m. and 9:00 p.m. local time at the consumer's location, unless the telephone solicitor has obtained the prior written consent of the consumer." S.C. Code Ann. § 37-21-30.

37. The SCTPPA's exclusions for messages sent with a consumer's prior express invitation or permission, or to a consumer with whom the sender has an established business relationship, do not apply "for the purposes of Section 37-21-70," and do not apply at all where

"the consumer previously stated a desire not to be contacted by or on behalf of the person on whose behalf the telephone solicitation is being made." S.C. Code Ann. § 37-21-20(6)(b).

38. "A person who is aggrieved by a violation of [the SCTPPA] is entitled to initiate an action to enjoin the violation and to recover actual losses in addition to damages in the amount of one thousand dollars for each violation." S.C. Code Ann. § 37-21-80(A). "If the court finds a wilful violation, the court may, in its discretion, increase the amount of the award to an amount not exceeding five thousand dollars for each violation." *Id.* § 37-21-80(B). The Court may also award reasonable attorneys' fees and court costs. *Id.* § 37-21-80(C).

39. The SCTPPA calls the private remedy "damages." A person aggrieved by a violation recovers "actual losses in addition to damages." S.C. Code Ann. § 37-21-80(A). Where the statute provides for "penalties" or a "civil penalty," it does so for different relief: sums the administrator may impose by administrative order, and a sum a court may award in an action brought in the name of the State by the Attorney General, which "must be paid to the general fund." *Id.* § 37-21-90(A), (B)(2).

## FACTUAL ALLEGATIONS

### A. Defendant's Text-Message Marketing

40. Defendant markets its cosigner personal loans to consumers by text message. The messages at issue were sent from a single dedicated SMS short code, 28126; addressed the recipient by first name; were signed by first-named representatives (for example, "Ben" or "Jade") or simply "Transform Credit"; contained links on a click-tracking link-shortening domain, tcrdt.com; and, in many instances, closed with the instruction, "Reply CANCEL to unsubscribe."

41. On or about September 21, 2023, Plaintiff applied to Defendant for a cosigner loan and provided the Number in connection with that application. Plaintiff never obtained a loan from Defendant.

42. Defendant then began sending Plaintiff marketing text messages from short code 28126. On September 24, 2023, at 9:10 a.m., for example, Defendant sent the following text message to the Number:

> "Hi Jerea, I see that you're yet to find a suitable cosigner. We work with you to find the right person so we can get your $3250 paid out. Send your cosigner this link to apply online in 2 minutes https://tcrdt.com/s/TP4XKWKQ If you don't plan to provide a cosigner let us know so I can reserve the $3250 for someone else. Reply CANCEL to unsubscribe. Ben, Transform Credit"

43. Other messages from Defendant likewise instructed Plaintiff to "Reply CANCEL to unsubscribe" or to "respond CANCEL."

**B. Plaintiff Opts Out Using Defendant's Own Keyword**

44. On or about September 24, 2023, after receiving the 9:10 a.m. message above, Plaintiff replied to short code 28126 with the single word "Cancel"—the opt-out keyword Defendant's own messages prescribed.

45. Plaintiff's reply was a seller-specific do-not-call request, a revocation of any consent she may have given in connection with her application, and a statement of her "desire not to be contacted again" by or on behalf of Defendant, made by the very method Defendant designated. 47 C.F.R. § 64.1200(d)(3), (f)(5)(i); S.C. Code Ann. § 37-21-70(A).

46. Plaintiff's request terminated any established business relationship arising from her application. 47 C.F.R. § 64.1200(f)(5)(i). From that moment, Defendant had neither an established business relationship with Plaintiff nor her prior express invitation or permission to send her telephone solicitations.

47. Defendant did not send Plaintiff any message confirming her opt-out.

**C. Defendant Ignores the Opt-Out and Keeps Texting—Including at 4:41 a.m.**

48. Defendant did not stop. Beginning fifty-eight days after Plaintiff's opt-out, Defendant sent, or caused to be sent, at least four more marketing text messages to the Number from short code 28126 (the "Post-Opt-Out Messages"), each as displayed on Plaintiff's telephone:

> November 21, 2023, 11:22 a.m.: "Hi Jerea, your $3250 cosigner loan was approved and can still be paid out with 1 MONTH FREE before Black Friday https://tcrdt.com/s/PDEW04LI Thanks, Transform Credit"
>
> November 22, 2023, 4:41 a.m.: "Hi Jerea, your $3250 cosigner loan was approved and can still be paid out with 1 MONTH FREE before Black Friday https://tcrdt.com/s/PDEW04LI Thanks, Transform Credit"
>
> November 22, 2023, 12:28 p.m.: "Hi Jerea, your $3250 cosigner loan was approved and can still be paid out with 1 MONTH FREE before Black Friday https://tcrdt.com/s/PDEW04LI Thanks, Transform Credit"
>
> January 2, 2024, 6:18 p.m.: "Hi Jerea, Great news we can lend you $7000! You just need a cosigner who: Has a 750+ credit score or owns their home, Trusts you & will sign the agreement. Most ask family or friends. They can apply here https://tcrdt.com/s/TP4XKWKQ. Any questions, reply and I'll get back to you. If you don't plan to provide a cosigner let us know so I can reserve . . . ."

49. Each of the Post-Opt-Out Messages was sent more than eight weeks after Plaintiff's opt-out—outside even the thirty-day outer limit in effect at the time—and more than two and a half years after the Number was registered on the National Do-Not-Call Registry.

50. The November 22, 2023 message was sent at 4:41 a.m. local time at Plaintiff's location—before 8:00 a.m.

51. Each of the Post-Opt-Out Messages was a "telephone solicitation" and was sent for "telemarketing" purposes within the meaning of 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(13), (15), and a "telephone solicitation" within the meaning of S.C. Code Ann. § 37-21-20(6). Each was sent to encourage Plaintiff to take out a loan from Defendant—offering to pay

out a $3,250 loan “with 1 MONTH FREE before Black Friday,” and later advertising that Defendant could “lend you $7000!” Each therefore offered or advertised an extension of credit and encouraged the purchase of Defendant’s services.

52. The Post-Opt-Out Messages bear the hallmarks of an automated, templated mass-marketing campaign: three were character-for-character identical and were sent within roughly twenty-five hours of one another, including in the middle of the night; each was personalized by a merged-in first name; each came from a single dedicated short code; and each contained a click-tracking link. On information and belief, Defendant sends the same templated messages to thousands of consumers.

53. Defendant’s own messages establish that it operated an automated keyword opt-out system: they told recipients to “Reply CANCEL to unsubscribe.” Defendant therefore had the capability to honor Plaintiff’s “Cancel” immediately and automatically, and it either failed to record her request or recorded it and sent marketing messages anyway.

54. On information and belief, Defendant (a) has not instituted the written do-not-call policy required by 47 C.F.R. § 64.1200(d)(1); (b) has failed to train its personnel and vendors in the existence and use of an internal do-not-call list, *id.* § 64.1200(d)(2); and/or (c) has failed to record and honor do-not-call requests, *id.* § 64.1200(d)(3), (6). Defendant’s transmission of marketing messages to Plaintiff after she used Defendant’s own opt-out keyword is itself powerful evidence of each of these failures.

55. On information and belief, Defendant does not scrub, or does not adequately scrub, its marketing lists against the National Do-Not-Call Registry, and it treats a consumer’s loan inquiry or application as license to send telephone solicitations indefinitely—even after the consumer has asked it to stop.

56. The Post-Opt-Out Messages were received by Plaintiff within a single 12-month period.

**D. Plaintiff's Injuries**

57. Defendant's messages harmed Plaintiff. They invaded her privacy and intruded upon her seclusion; one arrived at 4:41 a.m.; they annoyed and harassed her; they occupied her telephone and its storage; they depleted her telephone's battery; and they wasted her time, including the time spent reading and dealing with messages she had already told Defendant to stop sending.

**E. Defendant's Knowing and Willful Conduct**

58. Defendant's violations were knowing and willful. Defendant is a licensed consumer lender that, by its own account, lends in numerous States; it designed its messages to carry an opt-out keyword; Plaintiff used that keyword; and Defendant nonetheless kept sending her marketing messages as late as January 2, 2024, more than three months after she opted out, including one before dawn, to a number that had been on the National Do-Not-Call Registry since 2021.

59. Absent an injunction, Plaintiff reasonably fears that Defendant will continue to send telephone solicitations to her and to others who have asked it to stop or whose numbers are registered on the National Do-Not-Call Registry.

60. On information and belief, Defendant and its text-messaging vendors maintain records of every outbound message (including the date, time, content, sending short code, and recipient number), every inbound keyword reply (including "CANCEL" and "STOP"), and every recipient's application or account status, from which the members of each class can be readily identified.

## CLASS ACTION ALLEGATIONS

61. Plaintiff brings this action individually and on behalf of all others similarly situated under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), as a member and representative of the following classes and subclass (together, the "Classes"):

> **Do-Not-Call Registry Class:** All persons in the United States who, from four years before the filing of this action through the date of class certification, received more than one telephone solicitation (including by text message) within any 12-month period, made by or on behalf of Defendant, to a telephone number that had been registered on the National Do-Not-Call Registry for at least 31 days.
>
> **Internal Do-Not-Call Class:** All persons in the United States who, from four years before the filing of this action through the date of class certification, received more than one telemarketing text message or call within any 12-month period, made by or on behalf of Defendant, after the person had asked Defendant, including by replying "CANCEL," "STOP," or a similar word, that the messages stop.
>
> **Quiet-Hours Class:** All persons in the United States who, from four years before the filing of this action through the date of class certification, received more than one telephone solicitation (including by text message) within any 12-month period, made by or on behalf of Defendant, at least one of which was initiated before 8:00 a.m. or after 9:00 p.m. local time at the called party's location.

**South Carolina Subclass:** All members of the foregoing classes who, from three years before the filing of this action through the date of class certification, received such a telephone solicitation at a wireless telephone number with a South Carolina area code or at a residence in South Carolina.

62. Excluded from the Classes are Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, legal representatives, successors, and assigns; any judge assigned to this case and the members of the judge's immediate family and staff; and Plaintiff's counsel. Plaintiff reserves the right to amend the class definitions after discovery.

63. **Numerosity.** The members of the Classes are so numerous that joinder of all members is impracticable. On information and belief, Defendant sent templated marketing text messages en masse to thousands of consumers in numerous States, including hundreds or thousands who had replied "CANCEL" or "STOP," hundreds or thousands whose numbers were registered on the National Do-Not-Call Registry, hundreds or thousands who received messages before 8:00 a.m. or after 9:00 p.m., and hundreds or thousands in South Carolina. The precise number of class members is ascertainable from Defendant's and its vendors' records.

64. **Ascertainability.** The Classes are defined by objective criteria. Their members can be identified from Defendant's and its vendors' message logs, keyword-reply logs, internal do-not-call lists, application records, and Registry scrub records, together with the National Do-Not-Call Registry itself.

65. **Commonality and predominance.** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members, including: (a) whether Defendant's messages were telephone solicitations and/or telemarketing; (b) whether Defendant initiated telephone solicitations to numbers registered on the National Do-

Not-Call Registry for at least 31 days; (c) whether Defendant instituted the procedures required by 47 C.F.R. § 64.1200(d); (d) whether Defendant honored "CANCEL" and other do-not-call requests within the time required by law; (e) whether a consumer's do-not-call request terminated any established business relationship; (f) whether Defendant initiated telephone solicitations before 8:00 a.m. or after 9:00 p.m. local time at the called party's location; (g) whether Defendant's conduct violated S.C. Code Ann. §§ 37-21-30 and 37-21-70; (h) whether Defendant's violations were knowing or willful; and (i) the appropriate measure of statutory damages and the scope of injunctive relief.

66. **Typicality.** Plaintiff's claims are typical of the claims of the Classes. Plaintiff, whose Number has been registered on the National Do-Not-Call Registry since March 2, 2021, received more than one of Defendant's telephone solicitations within a 12-month period; received them after replying "Cancel" to Defendant; received one of them at 4:41 a.m.; and received them at a wireless number with a South Carolina area code. Her claims arise from the same course of conduct and rest on the same legal theories as those of every class member.

67. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes. Her interests are aligned with, and not antagonistic to, those of the Classes, and she has retained counsel experienced in consumer class actions and TCPA litigation.

68. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The statutory damages available to each class member are small relative to the burden and expense of individual litigation; class-wide liability can be established through common proof drawn from Defendant's own records; and class treatment will conserve judicial resources and avoid inconsistent adjudications. No unusual manageability difficulties are presented.

69. **Rule 23(b)(2).** Defendant has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief and corresponding declaratory relief are appropriate respecting the Classes as a whole.

**FIRST CAUSE OF ACTION**

**Negligent Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(c)(2)**

**(On Behalf of Plaintiff and the Do-Not-Call Registry Class)**

70. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

71. Defendant initiated, or caused to be initiated, more than one telephone solicitation within a 12-month period to Plaintiff and to each member of the Do-Not-Call Registry Class, including by text message to wireless numbers, 47 C.F.R. § 64.1200(e), whose telephone numbers had been registered on the National Do-Not-Call Registry for at least 31 days.

72. When Defendant sent the solicitations at issue, it did not have Plaintiff's or the class members' prior express invitation or permission evidenced by a signed, written agreement: any invitation or permission Plaintiff may have given in connection with her application was revoked by her opt-out. Any established business relationship had expired or had been terminated by a do-not-call request. 47 C.F.R. § 64.1200(c)(2)(ii), (f)(5)(i), (f)(15)(ii).

73. Defendant thereby violated 47 C.F.R. § 64.1200(c)(2), a regulation prescribed under 47 U.S.C. § 227(c), with respect to each such solicitation. The violations were, at a minimum, negligent.

74. Plaintiff and each member of the Do-Not-Call Registry Class are entitled to recover up to $500 in damages for each violation, 47 U.S.C. § 227(c)(5)(B), and to injunctive relief, *id.* § 227(c)(5)(A).

**SECOND CAUSE OF ACTION**

**Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(c)(2)**

**(On Behalf of Plaintiff and the Do-Not-Call Registry Class)**

75. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

76. Defendant's violations of 47 C.F.R. § 64.1200(c)(2) were knowing and/or willful. Defendant continued to send telephone solicitations to a number that had been registered on the National Do-Not-Call Registry for more than two and a half years, after the recipient had used Defendant's own opt-out keyword to tell it to stop.

77. Plaintiff and each member of the Do-Not-Call Registry Class ask the Court, in its discretion, to increase the award to up to $1,500 for each knowing or willful violation, 47 U.S.C. § 227(c)(5), and seek injunctive relief, *id.* § 227(c)(5)(A).

**THIRD CAUSE OF ACTION**

**Negligent Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(d)**

**(On Behalf of Plaintiff and the Internal Do-Not-Call Class)**

78. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

79. Defendant initiated, or caused to be initiated, more than one telemarketing text message or call within a 12-month period to Plaintiff and to each member of the Internal Do-Not-Call Class after Plaintiff and each such member had asked Defendant to stop.

80. Defendant thereby violated 47 C.F.R. § 64.1200(d) and (e), regulations prescribed under 47 U.S.C. § 227(c), by initiating telemarketing communications to residential and wireless

telephone subscribers without having instituted the required minimum procedures—including a written do-not-call policy, personnel training, and the recording and honoring of do-not-call requests—and by failing to record and honor do-not-call requests within a reasonable time. 47 C.F.R. § 64.1200(d)(1)–(3), (6). No grace period excuses any message sent after a request: Defendant could honor a keyword reply immediately, and in Plaintiff's case every Post-Opt-Out Message was sent more than eight weeks after her request.

81. The violations were, at a minimum, negligent.

82. Plaintiff and each member of the Internal Do-Not-Call Class are entitled to recover up to $500 in damages for each violation, 47 U.S.C. § 227(c)(5)(B), and to injunctive relief, *id.* § 227(c)(5)(A).

**FOURTH CAUSE OF ACTION**

**Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(d)**

**(On Behalf of Plaintiff and the Internal Do-Not-Call Class)**

83. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

84. Defendant's violations of 47 C.F.R. § 64.1200(d) were knowing and/or willful. Defendant told recipients to reply "CANCEL," received Plaintiff's "Cancel" reply and class members' "CANCEL" and similar replies on its own short code, and nevertheless continued to send them telemarketing messages. Defendant knew, or recklessly disregarded, that the recipients had asked it to stop.

85. Plaintiff and each member of the Internal Do-Not-Call Class ask the Court, in its discretion, to increase the award to up to $1,500 for each knowing or willful violation, 47 U.S.C. § 227(c)(5), and seek injunctive relief, *id.* § 227(c)(5)(A).

**FIFTH CAUSE OF ACTION**

**Negligent Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(c)(1)**

**(On Behalf of Plaintiff and the Quiet-Hours Class)**

86. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

87. Defendant initiated, or caused to be initiated, telephone solicitations to Plaintiff and to each member of the Quiet-Hours Class, including by text message to wireless numbers, 47 C.F.R. § 64.1200(e), before 8:00 a.m. or after 9:00 p.m. local time at the called party's location, including the solicitation it sent to Plaintiff at 4:41 a.m. on November 22, 2023.

88. Defendant thereby violated 47 C.F.R. § 64.1200(c)(1). Plaintiff received more than one telephone call within a 12-month period by or on behalf of Defendant in violation of the regulations prescribed under 47 U.S.C. § 227(c), including the 4:41 a.m. message, and each member of the Quiet-Hours Class received more than one telephone solicitation from Defendant within a 12-month period, at least one of which violated 47 C.F.R. § 64.1200(c)(1). The violations were, at a minimum, negligent.

89. Plaintiff and each member of the Quiet-Hours Class are entitled to recover up to $500 in damages for each violation, 47 U.S.C. § 227(c)(5)(B), and to injunctive relief, *id.* § 227(c)(5)(A).

**SIXTH CAUSE OF ACTION**

**Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(c), and 47 C.F.R. § 64.1200(c)(1)**

**(On Behalf of Plaintiff and the Quiet-Hours Class)**

90. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

91. Defendant's violations of 47 C.F.R. § 64.1200(c)(1) were knowing and/or willful. Defendant controls when its automated platform transmits marketing messages and chose to transmit them in the middle of the night, including to a consumer who had already told it to stop.

92. Plaintiff and each member of the Quiet-Hours Class ask the Court, in its discretion, to increase the award to up to $1,500 for each knowing or willful violation, 47 U.S.C. § 227(c)(5), and seek injunctive relief, *id.* § 227(c)(5)(A).

**SEVENTH CAUSE OF ACTION**

**Violations of the SCTPPA, S.C. Code Ann. § 37-21-70(A) (Solicitation After a Request Not to Be Contacted)**

**(On Behalf of Plaintiff and the South Carolina Subclass)**

93. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

94. Each of the Post-Opt-Out Messages, and each like message to a member of the South Carolina Subclass, was a "telephone solicitation" under S.C. Code Ann. § 37-21-20(6): a text message sent to a wireless telephone with a South Carolina area code, or to a residence in South Carolina, for the purpose of offering or advertising an extension of credit and Defendant's services.

95. Defendant initiated, or caused to be initiated, those telephone solicitations to telephone numbers at which a person had previously stated a desire not to be contacted again by or on behalf of Defendant, within five years of that request, in violation of S.C. Code Ann. § 37-21-70(A). No exemption applies. *Id.* § 37-21-20(6)(b).

96. Plaintiff and each member of the South Carolina Subclass are persons aggrieved by those violations and are entitled to recover their actual losses in addition to damages of $1,000 for each violation, S.C. Code Ann. § 37-21-80(A). Because Defendant's violations were wilful, Plaintiff and each member of the South Carolina Subclass further ask the Court, in its discretion, to increase the award to up to $5,000 for each violation, *id.* § 37-21-80(B), and seek an award of reasonable attorneys' fees and court costs, *id.* § 37-21-80(C).

97. Defendant's violations were wilful for the reasons alleged above, including that Plaintiff stated her desire not to be contacted by replying with the very keyword Defendant designated for that purpose.

**EIGHTH CAUSE OF ACTION**

**Violations of the SCTPPA, S.C. Code Ann. § 37-21-70(B) (National Do-Not-Call Registry)**

**(On Behalf of Plaintiff and the South Carolina Subclass)**

98. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

99. Defendant initiated, or caused to be initiated, telephone solicitations, as defined by S.C. Code Ann. § 37-21-20(6), to telephone numbers on the National Do-Not-Call Registry, including each of the Post-Opt-Out Messages to the Number, in violation of S.C. Code Ann. § 37-21-70(B).

100. No exemption applies. The SCTPPA's exclusions for prior express invitation or permission and for established business relationships do not apply "for the purposes of Section 37-21-70," S.C. Code Ann. § 37-21-20(6)(b), and, independently, are unavailable where, as here, the consumer previously stated a desire not to be contacted by or on behalf of Defendant. *Id.*

101. Plaintiff and each member of the South Carolina Subclass are persons aggrieved by those violations and are entitled to recover their actual losses in addition to damages of $1,000 for each violation, S.C. Code Ann. § 37-21-80(A). Because Defendant's violations were wilful, Plaintiff and each member of the South Carolina Subclass further ask the Court, in its discretion, to increase the award to up to $5,000 for each violation, *id.* § 37-21-80(B), and seek an award of reasonable attorneys' fees and court costs, *id.* § 37-21-80(C).

**NINTH CAUSE OF ACTION**

**Violations of the SCTPPA, S.C. Code Ann. § 37-21-30 (Solicitation Outside Permitted Hours)**

**(On Behalf of Plaintiff and the South Carolina Subclass)**

102. Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

103. Defendant initiated, or caused to be initiated, telephone solicitations, as defined by S.C. Code Ann. § 37-21-20(6), at times other than between 8:00 a.m. and 9:00 p.m. local time at the consumer's location, without the consumer's prior written consent, including the solicitation it sent to Plaintiff at 4:41 a.m. on November 22, 2023, in violation of S.C. Code Ann. § 37-21-30.

104. No exemption applies: Plaintiff had previously stated her desire not to be contacted by or on behalf of Defendant. S.C. Code Ann. § 37-21-20(6)(b).

105. Plaintiff and each member of the South Carolina Subclass are persons aggrieved by those violations and are entitled to recover their actual losses in addition to damages of $1,000 for each violation, S.C. Code Ann. § 37-21-80(A). Because Defendant's violations were wilful, Plaintiff and each member of the South Carolina Subclass further ask the Court, in its discretion, to increase the award to up to $5,000 for each violation, *id.* § 37-21-80(B), and seek an award of reasonable attorneys' fees and court costs, *id.* § 37-21-80(C).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

(a) An order certifying the Do-Not-Call Registry Class, the Internal Do-Not-Call Class, the Quiet-Hours Class, and the South Carolina Subclass as defined above, appointing Plaintiff as class representative, and appointing her undersigned counsel as class counsel;

(b) A declaration that Defendant's conduct violated 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(c)(1), (c)(2), and (d), and S.C. Code Ann. §§ 37-21-30 and 37-21-70(A)–(B);

(c) An award to Plaintiff and each member of the Do-Not-Call Registry Class, the Internal Do-Not-Call Class, and the Quiet-Hours Class of up to $500 in damages for each violation, 47 U.S.C. § 227(c)(5)(B), increased to up to $1,500 for each violation the Court finds knowing or willful, *id.* § 227(c)(5);

(d) An award to Plaintiff and each member of the South Carolina Subclass of actual losses in addition to damages of $1,000 for each violation of the SCTPPA,

increased to up to $5,000 for each violation the Court finds wilful, S.C. Code Ann. § 37-21-80(A)–(B);

(e) An injunction prohibiting Defendant, and all persons acting on its behalf, from initiating telephone solicitations, including text messages, to numbers registered on the National Do-Not-Call Registry or to persons who have asked it to stop, and from initiating telephone solicitations before 8:00 a.m. or after 9:00 p.m. local time at the called party's location, and requiring Defendant to institute the do-not-call policies, training, and recordkeeping required by 47 C.F.R. § 64.1200(d), 47 U.S.C. § 227(c)(5)(A);

(f) An award of reasonable attorneys' fees and court costs, S.C. Code Ann. § 37-21-80(C), and as otherwise permitted by law;

(g) Pre-judgment and post-judgment interest as permitted by law; and

(h) Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims and issues so triable.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant immediately implement a litigation hold and take affirmative steps to preserve all documents, records, and electronically stored information relevant to the claims and defenses in this action, including, without limitation:

(a) all records of text messages and calls initiated to Plaintiff, the members of the Classes, or any consumer from short code 28126 or any other number or short code

used by Defendant or on its behalf, including the sending number, recipient number, date, time, time zone, and content of each message;

(b) all records of inbound replies to those numbers and short codes, including every "CANCEL," "STOP," and similar keyword reply, and Defendant's processing of each;

(c) all records identifying the software, platform, vendor, or system used to send the messages, including contracts, configuration settings, campaign and scheduling settings, and message templates;

(d) all records of any consent, application, inquiry, or established business relationship on which Defendant relies, including the date, method, and content of any purported consent;

(e) all internal do-not-call lists, suppression lists, opt-out logs, written do-not-call policies, and training materials;

(f) all records of scrubs of Defendant's marketing lists against the National Do-Not-Call Registry;

(g) all records in the possession, custody, or control of any vendor, lead source, or other person that Defendant engaged to send, or to assist in sending, the messages at issue; and

(h) all communications, internal or external, concerning the messages at issue, consumer complaints about them, or Defendant's compliance with the TCPA or the SCTPPA.

Defendant is on notice that the spoliation of any such evidence may result in an adverse-inference instruction, sanctions, or other appropriate relief.

Dated: November 18, 2026

**LONG LAW, LLC**

By: */s/ Brian D. Long*

Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Delaware Counsel for Plaintiff*

OF COUNSEL:

**LAVIAN, P.C.**
Ilan Lavian
(pro hac vice application forthcoming)
10680 W. Pico Blvd., Suite 270
Los Angeles, CA 90064
Telephone: (213) 212-3036
Email: ilan@lavianpc.com

*Attorneys for Plaintiff Jerea Aiken and the Proposed Classes*